**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-55940 |
| Plaintiff - Appellee, | D.C. No. 8:14-cv-00395-CJC-DFM |
| v. | |
| VINCENT EDWARD CANTU, AKA Vincent Escobedo, AKA The Polite Bandit, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Submitted June 8, 2016[**]
Pasadena, California

Before: REINHARDT and WARDLAW, Circuit Judges and BENNETT,[***] Senior
District Judge.

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]     The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]     The Honorable Mark W. Bennett, Senior District Judge for the U.S.
District Court for the Northern District of Iowa, sitting by designation.

In 2009, Vincent Cantu pled guilty to committing multiple armed bank robberies. He was sentenced to 162 months in prison and ordered to pay $37,338 in restitution to the banks. We affirmed his sentence in 2011. *United States v. Cantu*, 427 F. App'x 587 (9th Cir. 2011).

The present matter concerns Cantu's motion under Rule 41(g) of the Federal Rules of Criminal Procedure for the return of $3,000 that was seized from his home during a search. In support of his motion, he explains that the money represents part of a loan from his mother-in-law and must be returned because the government has no "legitimate reason" to retain it. *See United States v. Gladding*, 775 F.3d 1149, 1152 (9th Cir. 2014).

The district court denied Cantu's motion. The court concluded that the $3,000 actually represents proceeds from one of Cantu's robberies and may, accordingly, be applied to the restitution he owes the victim bank. As a result, the government has satisfied its burden of proving that it has "legitimate reason" to retain the money.[1] *Id.*

The district court did not clearly err in reaching this conclusion. Shortly after his arrest, Cantu admitted in an FBI proffer session that the $3,000 came from

---

[1] The parties agree that the government has "legitimate reason" to retain the money if indeed it is proceeds from a robbery.

2

his June 24, 2008 robbery of the Pacific Mercantile Bank. Although Cantu recants

that statement and tells a different story in his 41(g) motion, it was reasonable for

the district court to conclude that Cantu's statements in the proffer session were

truthful. According to the terms of the session, the government would not

prosecute Cantu for any conduct he admitted in the session as long as he was

candid. Cantu may have felt pressured to agree with the FBI agent, but he had

strong reason to tell the truth and no incentive to lie. Thus, the district court's

conclusion that the money came from the robbery was far from "illogical,

implausible, or without support in inferences that may be drawn from the facts in

the record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en

banc). To the contrary: Cantu himself admitted it.[2]

Nor did the district court abuse its discretion in deciding not to hold an

evidentiary hearing. Rule 41(g) requires the district court to "receive evidence on

any factual issue necessary to decide the motion," but it does not specifically

require an in-person hearing. Fed. R. Crim. P. 41(g). In this case, the district court

reasonably concluded that declarations from Cantu and his mother-in-law, along

with the report of the proffer session, would provide enough evidence to rule on

---

[2] Cantu's argument that his mother-in-law has special claim to the $3,000 as a creditor is beside the point: it presumes that the money is a loan from her and not proceeds from the robbery.

3

the motion. Cantu's counsel did not disagree, and Cantu does not explain what evidence he could have adduced at a hearing that he could not convey in a declaration. *See, e.g.*, *Ctr. Art Galleries-Hawaii, Inc. v. United States*, 875 F.2d 747, 754 (9th Cir. 1989) (finding that an evidentiary hearing was not required absent "a sufficient showing of what issues of fact would be resolved by an evidentiary hearing, and what evidence, in addition to that presented by the affidavits, would be adduced by such a hearing"). As a result, he has not shown that the lack of an evidentiary hearing caused him any prejudice.

The order of the district court is, therefore, **AFFIRMED**.

4